**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| PoolRe Insurance Corp., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:13-CV-01857-GHM |
| | ) | |
| v. | ) | |
| | ) | |
| Organizational Strategies, Inc., | ) | |
| Nicolette Hendricks, and William | ) | |
| Hendricks, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION
FOR TEMPORARY RESTRAINING ORDER**

TO THE HONORABLE COURT:

Defendants Organizational Strategies, Inc., Nicolette Hendricks and William Hendricks (collectively, "Defendants"), by and through undersigned counsel, hereby file their motion for a temporary restraining order (the "Motion"), and in support thereof, state as follows:

1. On June 25, 2013 PoolRe Insurance Corp. ("Plaintiff") filed a motion seeking the confirmation of an arbitration award that was yet to be issued.

2. The arbitration hearing commenced on June 26, 2013 and concluded on June 27, 2013.

3. On June 26, 2013, Plaintiff filed its Amended Complaint. Following the filing of the Amended Complaint, this Court issued an order to show cause for why the court should not dismiss the case for not being ripe. The case was not ripe because the arbitration award was yet to be issued. The Court ordered Plaintiff to file a response by July 9, 2013.

4. The Arbitrator issued his Award on July 9, 2013 (the "Award").

5. Plaintiff filed its response to the Court's order to show cause, attaching the Award.

6. On July 10, 2013, Plaintiff filed its Second Amended Complaint which seeks to confirm the arbitration award issued on July 9, 2013.

7. By way of its Second Amended Complaint, Plaintiff seeks to compel arbitration of a second arbitration demand (the "Motion to Compel")[1] filed on or about July 9, 2013 (the "Second Arbitration Demand") related to intellectual property claims (the "Second Arbitration") asserted by non-parties Capstone Associated Services, LP., Capstone Associated Services (Wyoming), LP, and Capstone Insurance Management, Ltd. (the "Capstone Entities").

8. Through this Motion, Defendants seek a temporary restraining order enjoining Plaintiff and the Capstone Entities from proceeding with the Second Arbitration pending the resolution of the Motion to Compel.

9. To successfully obtain "a temporary restraining order or other injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure" the party seeing the injunction "has the burden to demonstrate each of four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any prejudice the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest."[2]

---

[1] *See* Compl. at p.7.
[2] *S & T Oil Equipment & Machinery, Ltd. v. Juridica Investments Limited*, C.A. No. H-11-0542, 2011 WL 864837, *1 (S. D. Tex. March 10, 2011) (citing *Janvey v. Alguire*, 628 F.3d 164, 174 (5th Cir. 2010); *Affiliated Prof' l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999)); *See also West Alabama Quality of Life Coalition v. U.S. Fed. H'wy Admin.*, 302 F. Supp. 2d 672, 679 (S.D. Tex. Feb. 9, 2004).

58893:30012821

*There is a substantial likelihood that Defendants will succeed on the merits.*

10. There is a substantial likelihood that the Defendants will succeed in opposing the pending Motion to Compel because the agreement at issue does not contain an agreement to arbitrate, but rather an unambiguous jurisdiction and venue clause that directs all intellectual property disputes arising under the agreement to be heard in the courts of Harris County Texas.

11. "When the court evaluates a motion to compel arbitration, it must first determine whether the parties entered into a valid arbitration agreement."[3] This Court has found that there is a substantial likelihood of success where the plaintiff shows that the contract did "not clearly indicate the parties' intention to submit to binding arbitration."[4]

12. In the Second Arbitration Demand, the Capstone Entities "make[] an additional claim against the OSI parties for the economic damages inflicted on Capstone as the consequences of the *breach of the provisions of Article V of the Capstone Services Agreement* regarding the use of intellectual property of Capstone . . . ."[5]

13. The Capstone Agreement does not contain an arbitration clause. Rather, it unambiguously provides that

> This Agreement shall be governed by and construed in accordance with laws of the State of Texas. *For purposes of any disputes arising under Article V of the Agreement, the sole venue and jurisdiction for resolution of such disputes shall be courts located in Harris County, Texas*. As to other disputes arising under this Agreement (*with the express exception of disputes arising under Article V hereof*), venue and

---

[3] *See Mugweni v. Wachovia Corp.*, 2009 WL 1148236, at *2 (N.D. Tex. Apr. 28, 2009) (citing *Fleetwood Enters., Inc. v. Goskamp,* 280 F.3d 1069, 1073 (5th Cir. 2002)).

[4] *See Kellogg Brown & Root Services v. Altanmia Commercial Marketing Co.*, 2007 WL 4190795, at *14 (S.D. Tex. Nov. 21, 2007) (holding that "because it does not 'clearly appear that the intention of the parties was to submit their dispute to the arbitrators and to be bound by that decision'" the plaintiff has shown a likelihood of success on the merit) (citing *Porter & Clements LLP v. Stone*, 935 S.W.2d 217, 220 (Tex. App-Houston 1996)).

[5] *See* Exhibit A at ¶2 (emphasis added).

jurisdiction shall be in Delaware it being expressly recognized that parallel proceeding may thereby result.[6]

14. There is no denying that the parties agreed to resolve their disputes with regards to Article V of the Capstone Agreement in the courts of Harris County Texas, and not through arbitration.

15. Moreover, the Capstone Entities have conceded that the venue and jurisdiction clause governs any disputes arising under Article V of the Capstone Agreement. Capstone's papers filed in the Delaware District Court, admit that "[t]he first sentence of the Venue Clause merely carves out an exception that intellectual property disputes ***must be*** resolved in courts located in Harris County, Texas."[7]

16. As there is an express venue and jurisdiction clause in the Capstone Agreement which governs the resolution of the claims raised in the Second Arbitration Demand, there is no valid agreement to arbitrate. The Capstone Entities cannot compel Defendants to arbitrate those claims. They must be resolved in the Courts of Harris County, and so, there is substantial likelihood of Defendants' success on the merits with respect to the Motion to Compel.

***There is a substantial threat of irreparable harm to Defendants.***

17. "Showing irreparable harm is '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction.'"[8] Allowing the Second Arbitration to continue pending the outcome of the Motion to Compel carries a substantial threat of irreparable harm to Defendants. To demonstrate irreparable harm, "the injury at issue must be actual and imminent,

---

[6] *See* Exhibit B at Article VI, 6.4 (emphasis added).
[7] *See* Reply in Support of Motion to Compel Arbitration at p. 7, attached hereto as <u>Exhibit C</u> (emphasis added).
[8] *See Amegy Bank Nat. Ass'n. v. Monarch Flight II LLC*, 2011 WL 4948986, at *5 (S.D. Tex. Oct. 18, 2011).

4

58893:30012821

not speculative or remote. Under Fifth Circuit law, an injury is irreparable if there is no remedy at law. . . ."[9]

18. Forcing a party to arbitrate non-arbitrable claims is sufficient to show that a party will suffer irreparable harm.[10] Defendants are entitled to have disputes resolved in the forum for which they bargained.[11] The language of the Capstone Agreement is unmistakable and as such, the Capstone Entities have failed to make any showing that there is a valid arbitration agreement governing the demands made in its Second Arbitration Demand or that arbitration is the proper forum for the resolution of these disputes.

19. Forcing the Defendants to arbitrate a matter which they did not agree to arbitrate "regardless of the final result through arbitration or judicial review, unalterably deprives [Defendants] of [their] right to select the forum in which [they bargained] to resolve [their] disputes."[12]

20. In *Kellogg Brown*, two of three subcontracts expressly stated that claims arising under them were subject to arbitration; the third provided that "the parties must pursue ADR procedures before 'the filing of any litigation' against [the plaintiff]." The plaintiff disputed that claims arising under the third subcontract were subject to arbitration.[13] The subcontract at issue

---

[9] *See Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp.2d 223, 227 (S.D. Tex. Nov. 9, 2011) (internal citations omitted).
[10] *See Kellogg Brown,* 2007 WL 4190795 at *16; *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Burhans*, 947 F.Supp. 319, 322 (W.D. Mich. April 26, 1995); *Monavie LLC v. Quixtar Inc.*, 741 F.Supp. 2d 1227, 1240-42 (D. Utah Oct. 26, 2009) (compiling caselaw from several circuits to conclude that forcing the arbitration of nonarbitrable issues constitutes irreparable harm).
[11] *See First Preston Management, Inc. v. AFR & Associates, Inc.,* 2008 WL 5136916 at *3 (N.D. Tex. Dec. 5, 2008).
[12] *See Koman v. Weingarten/Investments, Inc.*, 2010 WL 3717312 at *9 (S.D. Tex. Sept. 17, 2010), quoting *Chicago Sch. Reform Bd. of Trustees v. Diversified Pharmaceutical Servs., Inc.,* 40 F.Supp.2d 987, 996 (N.D.Ill.1999).
[13] *Id*. at *13.

58893:30012821

included the provision that the parties would submit to ADR prior to the institution of any litigation which, the Court reasoned, "*allows* the parties to agree on binding arbitration but does not *require* them to do so . . . ."[14] In so reasoning, the Court found that if the plaintiff was forced to arbitrate, it would "be stripped of its contractual rights to have these claims resolved in litigation and will be forced to arbitrate in a foreign proceeding."[15] Here, the Capstone Agreement has *no* provisions for any alternative dispute remedy—it expressly states that all issues arising under Article V will be resolved "in *courts* located in Harris County, Texas."[16]

21. The injury at issue is actual and imminent. Pursuant to the Second Arbitration Demand, as with the original arbitration demand, the Capstone Entities seek an expedited, four-month arbitration. If a preliminary injunction is not granted, and the arbitration continues apace, there is the possibility that the arbitration could be concluded before the Motion to Compel is fully briefed, argued and decided by this Court. This harm is not remote or speculative; that is precisely the sequence of events that occurred in the original arbitration. Indeed, Capstone is pressing ahead without Defendants by preparing a scheduling order, demanding a conference, and issuing discovery requests.[17]

***The threatened injury outweighs any harm the injunction might cause.***

22. The third element required for a temporary restraining order is the balancing of the equities. "[T]he court evaluates the severity of the impact" if the injunction were granted against "the hardship that would occur . . . if the injunction is denied."[18]

---

[14] *Id* at 14 (emphasis in original).
[15] *Id*.
[16] Exhibit B at Section 6.4 (emphasis added)
[17] *See* <u>Exhibit D</u>.
[18] *See West Alabama Quality of Life Coalition v. U.S. Fed. H'wy Administration*, 302 F.Supp.2d 672, 685 (S.D. Tex. Feb. 9, 2004) ("[I]n balancing the interests of the parties, courts consider the

6

23. Here, the balancing of the equities favors Defendants. The result of the first arbitration gives Defendants little comfort as to the pending Second Arbitration's outcome. By way of example, the arbitrator issued an opinion that was a verbatim draft of the Feldman Law Firm's "reasoned opinion" on the day that this Court had set a deadline for responding to the order to show cause. Notably, the Arbitrator did not invite the parties to submit "reasoned opinions," at least of which Defendants are aware. Plaintiff, further was so confident that the arbitrator would award in its favor that it sought confirmation of the award before the arbitration proceeding started.

24. The harm to Plaintiff and/or the Capstone Entities in a stay is minimal. A temporary injunction, staying the arbitration, would allow this Court to fully consider the merits of the Motion to Compel without prejudicing any party as to the final resolution of the claims made by the Capstone Entities in the Second Arbitration Demand. The harm to Defendants in forcing them to arbitrate claims they did not agree to arbitrate is more compelling and imminent than any delay to the resolution of the Capstone Entities' claims and militates in favor of a stay.[19] In short, the temporary restraining order, would be just that, temporary. The Capstone Entities will not be prejudiced.

25. Further, the balancing of the equities favors Defendants further in that a temporary restraining order will stop endless rounds of arbitration. As recently as July 18, 2013, Plaintiff and the Feldman Law Firm, LLP purported to intervene in the Second Arbitration Demand.[20] The relevance of their intervention to the claims raised in the Second Arbitration Demand is wholly unclear, as they seem only to seek an order from the arbitrator enforcing the

---

competing claims of injury and must balance the hardships on each party of either granting or withholding the requested relief.") (internal citations omitted).
[19] *See Koman*, 2010 WL 3717312 at *10.
[20] *See* <u>Exhibit E</u>.

7

original arbitration award. The potential for Plaintiff, the Capstone Entities, or any of the other claimants in the original arbitration to institute endless rounds of arbitration, piggybacking from one arbitral award to the next, is well within the realm of possibility.

26. This does nothing but run up costs and force the unnecessary expenditure of time attempting to resolve these claims in multiple venues, with no end in sight. Although injuries that can be corrected by compensatory or other relief are not alone sufficient to demonstrate harm supporting injunctive relief, the irreparable harm that Defendants will suffer should they be forced to arbitrate claims they did not agree to arbitrate is evident. The outcome and the process of the original arbitration is a preview of the harm. The balancing of the equities, therefore, supports a stay to determine the arbitrability of the claims raised in the Second Arbitration Demand.

***The injunction will not disserve the public interest.***

27. The final factor in determining whether injunctive relief should be granted is whether granting the relief will be adverse to the public interest. "Although federal policy favors the enforcement of arbitration agreements, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"[21] The clear language of the Capstone Agreement demonstrates that intellectual property disputes are to be resolved in the courts, not through arbitration. Therefore, it would not be a disservice to the public interest to stay the Second Arbitration pending the resolution on the merits of the Motion to Compel.

---

[21] *See Kellogg*, 2007 WL 4190795 at *16; *see also Koman v. Weingarten/Investments, Inc.*, 2010 WL 3717312 at *10 (S.D. Tex. Sept. 17, 2010).

8

WHEREFORE, Defendants respectfully request that this Court grant their motion for a temporary restraining order and enter an order in substantially the form attached hereto.

Respectfully Submitted,

By: /s/ Neil R. Lapinski
    Neil R. Lapinski
    Attorney-in-Charge
    1925 Lovering Avenue
    Wilmington, DE 19806
    Telephone:  (302) 652-2900
    Facsimile:  (302) 652-2348
    Email:  NLapinski@gfmlaw.com

    John F. Unger
    ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
    Federal I.D. No. 2808
    Pennzoil Place
    711 Louisiana Street, Suite 500
    Houston, TX 77002
    Telephone:  (713) 224-8380
    Facsimile:  (713) 225-9945
    Email:  john.unger@roystonlaw.com

Of Counsel:

**GORDON FOURNARIS & MAMMARELLA, PA.**
William M. Kelleher
BKelleher@gfmlaw.com
Phillip A. Giordano
PGiordano@gfmlaw.com
1925 Lovering Avenue
Wilmington, DE 19806
Telephone:  (302) 652-2900
Facsimile:  (302) 652-2348

9

58893:30012821

## CERTIFICATE OF SERVICE

      I hereby certify that true and correct copies of the above has been served by electronic CM/ECF filing, on this 23rd day of July, 2013, to counsel as listed below:

Joseph F. Greenberg  
The Feldman Lawfirm, LLP  
Two Post Oak Central  
1980 Post Oak Boulevard  
Suite 1900  
Houston, Texas 77056  

                      /s/ John F. Unger  
                Of Royston, Rayzor, Vickery and Williams LLP

58893:30012821